CITY OF CINCINNATI, APPELLEE, *v.* BURROW, APPELLANT.

(No. C-850589—Decided April 9, 1986.)

*Richard A. Castellini,* city solicitor, *Paul J. Gorman,* city prosecutor, and *Patrick K. Dunphy,* for appellee.

*Frost & Jacobs* and *Michael L. Cioffi,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Hamilton County Municipal Court.

It is asserted in the case *sub judice* that a judge of the municipal court erred by finding, on the basis of the evidence adduced at trial in connection with a charge brought pursuant to Cincinnati Traffic Code Section 506-40, that the defendant-appellant, David D. Burrow, had disobeyed a signal controlling the flow of traffic at the intersection of two public streets in Cincinnati.[1] Because the facts involved in the prosecution are now, in all material respects, undisputed, our task on appeal is limited to the resolution of one precisely drawn question: whether a violation of the ordinance may lawfully be predicated upon the fact that a motorist has responded to a red light at an intersection by bringing his vehicle to a stop at a point in advance of the intersection itself, but beyond a white "stop-bar" line painted on the pavement in the motorist's lane of travel. For the following reasons, we are convinced that this pivotal question must be answered in the affirmative.

The duty of a motorist confronted with a red light is defined generally by Cincinnati Traffic Code Section 506-40 (c)(1), which provides, in relevant part, that "[a]ll traffic facing the signal shall stop before entering the intersection and shall remain standing until authorized to proceed by a traffic control device * * *." Relying squarely upon this foundational provision, Burrow argues that he did all that the ordinance under which he was charged required of him by arriving at a complete stop in such a manner that the front end of his vehicle did not break the real or projected lateral line that, for his purposes, marked the appropriate boundary of the intersection under the definition separately set forth in Cincinnati Traffic Code Section 501-1-I.[2] From this, he urges us to conclude that "[w]hile [he] may have been

---

[1] The record reflects that a Cincinnati police officer cited Burrow for a violation of the ordinance as a result of an accident that occurred when the side of a bus scraped against the front end of Burrow's vehicle as the bus driver was attempting to complete a left turn across Burrow's lane of travel at the intersection.

[2] The ordinance reads, in relevant part, as follows:

" 'Intersection' shall mean the area bounded by the lateral lines, real or projected, of two or more public streets or highways which meet or cross another at grade."

negligent in stopping where he did," *i.e.,* at a point beyond the white "stop-bar" line, "he was not in violation of § 506-40."

Although from an evidentiary standpoint we have no quarrel with this argument as far as it goes, it is our view that it ultimately misses the mark by failing to account properly for a material factor that must be held to come into play in the case *sub judice* under a part of Cincinnati Traffic Code Section 506-40 overlooked by Burrow. Where, as here, there is present at the intersection, in addition to the red light, something that is clearly intended to serve as a separate traffic-control device, it is apparent to us that the duty of the motorist cannot be judged solely by reference to the general standard articulated in Cincinnati Traffic Code Section 506-40(c)(1).

In this respect, Cincinnati Traffic Code Section 506-40(g) provides as follows:

"Where more than one traffic control signal or device is shown simultaneously, vehicular traffic shall comply with the traffic control signal or device applicable to the traffic lane and direction in which it is proceeding or about to proceed."

Reading by the dictates of common sense Section 506-40(g) *in pari materia* with Section 506-40(c)(1), we are convinced in the case *sub judice* that there were two traffic-control signals or devices[3] applicable to the lane in which Burrow found himself as he approached the intersection where he was cited, one serving to complement, rather than to negate, the function of the other. It follows, then, that Burrow's duty as a motorist was twofold. Not only was he obliged to bring his vehicle to a stop for the red light before entering the intersection, but he was also required to refrain from crossing the white "stop-bar" line in advance of the intersection as part of his response to the light. Having complied with the law in one respect but not in the other, he cannot now argue that his failure to observe the "stop-bar" line must, standing alone, be held to fall short of one of the traffic offenses defined in Cincinnati Traffic Code Section 506-40. The only assignment of error given to us for review is, accordingly, without merit.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*

DOAN, P.J., SHANNON and BLACK, JJ., concur.

---

[3] Traffic-control devices are defined in Cincinnati Traffic Code Section 501-1-T3 in the following manner:

" 'Traffic-control devices' shall mean all signs, signals, *markings,* channelization, parking meters, and devices not inconsistent with the traffic code placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, including signs denoting names of streets and highways." (Emphasis added.)

Our analysis in the case *sub judice* mandates the conclusion that the "stop-bar" line crossed by Burrow was a marking in no way inconsistent with the red light at the intersection for purposes of the Cincinnati Traffic Code.